**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RICARDO RAMIREZ** | : | |
| | : | |
| **v.** | : | **C.A.: 08-205S** |
| | : | |
| **ASBELL T. WALL, Director** | : | |
| **Of RI Department Of Corrections** | : | |

**STATE OF RHODE ISLAND'S MOTION TO DISMISS PETITION UNDER 28 USC § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

Now comes the State of Rhode Island, and by and through its attorney, moves to dismiss the above-captioned petition under 28 USC § 2254 for writ of habeas corpus by a person in state custody for the reasons set forth in the attached memorandum.

Respectfully Submitted,

**STATE OF RHODE ISLAND**
By Its Attorneys,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

/s/ Jane M. McSoley
______________________________
**JANE M. McSOLEY, #3136**
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

**CERTIFICATION**

Pursuant to AP 10 of this Court, effective August 1, 2006, I hereby certify that on June 12, 2008, I filed this document electronically and that it is available for viewing and downloading from the ECF system. I also certify that I sent a copy of the within motion to the following by first-class mail on the same date: Ricardo Ramirez, Pro Se, #56835, Maximum Security, Hope 1, H1-07, P.O. Box 8273, Cranston, RI 02920.

**/s/** Jane M. McSoley

PDF created with pdfFactory trial version www.pdffactory.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RICARDO RAMIREZ** | : | |
| | : | |
| **vi.** | : | **C.A.: 08-205S** |
| | : | |
| **ASBELL T. WALL, Director** | : | |
| **Of RI Department Of Corrections** | : | |

**STATE OF RHODE ISLAND'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

The petitioner, Ricardo Ramirez, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which he claims to be in custody in violation of the constitution and laws of the United States. Ramirez was charged by Indictment No. P1/01-0645 with the 1981 murder of William Sargent. A trial before Sheehan, J., in Providence County Superior Court ended in a declaration of mistrial on May 9, 2002. On September 26, 2002, following a trial before Darigan, J., a Providence County Superior Court jury found petitioner guilty of first-degree murder.[1] Justice Darigan denied the petitioner's motion for a new trial on October 17, 2002 and on December 6, 2002, he sentenced Ramirez to a term of life imprisonment, along with a consecutive twenty-five year sentence as an habitual offender in accordance with R.I.G.L. 1956 § 12-19-21. Ramirez's subsequent appeal to the Rhode Island Supreme Court was denied and dismissed on December 17, 2007. State v. Ramirez, 936 A.2d 1254 (R.I. 2007).

---

[1] The facts of this case are contained within the Brief of Appellee, State of Rhode Island, pp. 2-13, as well as the decision issued by the Rhode Island Supreme Court. See State v. Ramirez, 936 A.2d 1254, 1257-59 (R.I. 2007) (Attached).

PDF created with pdfFactory trial version www.pdffactory.com

On May 21, 2008, Ramirez filed a petition for writ of habeas corpus in this court pursuant to 28 U.S.C. § 2254. An order issued by United States District Judge William E. Smith on May 29, 2008 has directed the State of Rhode Island, a designated party respondent, to file a response on or before June 17, 2008. The State of Rhode Island, by and through its attorney, hereby files a motion to deny and dismiss the petition with the accompanying memorandum in compliance with that order.[2]

**Standard of Review**

Pursuant to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, no habeas corpus petition filed by a person in state custody shall be granted unless the state court adjudication underlying petitioner's conviction "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1); (d)(2). Williams v. Taylor, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519, (2000). In Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850 (2002), the Supreme Court elucidated further on this amendment to federal habeas law, emphasizing that the "contrary to" and "unreasonable application" provisions set forth in § 2254 (d)(1) have independent meaning. A federal court may grant habeas relief pursuant to the "contrary clause" if the state court "applies a rule different from the governing law set forth in [the United States Supreme Court's]

---

[2] If necessary to comply with Rule 5(c) of the Rules governing § 2254 cases, the State will endeavor to obtain copies of the transcript of the trial in issue here if this Court so requests. Pursuant to Rule 5(d), the State has submitted a copy of the State/Responder's brief filed in the Rhode Island Supreme Court in State v. Ramirez, No. SU-03-0027.



PDF created with pdfFactory trial version www.pdffactory.com

cases, or if it decides a case differently than [the United States Supreme Court] has done on a set of materially indistinguishable facts." *Id.* The writ may also be granted under the "unreasonable application" clause in cases where the state court has correctly identified a legal principle derived from a United States Supreme Court decision, but unreasonably applies it to the facts of a particular case. *Id.* This latter inquiry centers on "whether the state court's application of clearly established federal law is objectively unreasonable." *Id.* Quoting Williams, the late Chief Justice Rehnquist, writing for the Court, stressed that "an unreasonable application is different from an incorrect one;" in other words, "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" *Id.* (citations omitted).

The United States Court of Appeals for the First Circuit has interpreted the "contrary to" clause of § 2254 to apply only in situations in which a state court "either applies a test that is inconsistent with one announced by the [United States Supreme] Court or reaches the opposite conclusion on materially indistinguishable facts." Rashad v. Walsh, 300 F.3d 27, 34-35 (1st Cir. 2002). Turning to the "unreasonable application" prong of the statute, a state court is guilty of such when it applies a correct legal standard in an objectively unreasonable manner, unreasonably extends a Supreme Court precedent to an inappropriate context, or fails to extend such a precedent to an appropriate context. *Id.* The "unreasonable application standard, as the First Circuit Court of Appeals observed in Rashad, "does not demand infallibility: a state court's decision may be



PDF created with pdfFactory trial version www.pdffactory.com

objectively reasonable even if a federal habeas court, exercising its independent judgment, would have reached a different conclusion." 300 F.3d at 35

The First Circuit Court elaborated on this point further in McCambridge v. Hall, 303 F.3d 24 (1st Cir. 2002), again emphasizing that under Williams v. Taylor, an "erroneous application" of Supreme Court precedent is not necessarily equated with an "unreasonable application," as "the mere fact that there was some error or that the state decision was incorrect is not enough." The "unreasonableness" of the ruling must be incrementally "great enough to make the decision unreasonable in the independent and objective judgment of the federal court." "If it is a close question whether the state decision is in error, than the state decision cannot be an unreasonable application." McCambridge v. Hall, 303 F.3d at 36-37. As examples of state court decisions that might be considered unreasonable, the First Circuit Court cited decisions that are devoid of support in the record or that exhibit arbitrary or capricious reasoning. *Id.* Moreover, while state court decisions must comply with those United States Supreme Court holdings that are clearly established at the time of the state rulings, it is appropriate for this Court to consider factually similar cases from other lower federal courts in assessing the reasonableness of the state court ruling in issue. Ouber v. Guarino, 293 F.3d 19, 26 (1st Cir. 2002).

As a final point, it should be noted that under § 2254 (d)(1), "a state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary." Rashad, 300 F.3d at 35. Unless petitioner carries this burden, a federal habeas court is obliged to credit the factual findings of state courts at the trial and appellate levels. *Id.* This includes those



PDF created with pdfFactory trial version www.pdffactory.com

reasonable inferences drawn by state courts from the evidence presented at trial as well as from the trial record. Rashad, at 39, n. 8.

If a state decision rests on an adequate independent state ground of procedural default, federal habeas review is unavailable absent a showing of cause and prejudice or a showing that a miscarriage of justice will result. McCambridge v. Hall, 303 F.3d at 34 *citing* Strickler v. Greene, 527 U.S. 263, 282, 119 S.Ct. 1936, 1948-49 (1999).

**Discussion**

Ramirez's petition consists of nothing more than the same list of complaints he submitted to the Rhode Island Supreme Court for review, accompanied by no discussion whatsoever as to how these allegedly erroneous rulings at his trial warrant habeas relief, in other words, were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court or based on an unreasonable determination of the facts in light of the evidence elicited at the state court proceeding. Williams v. Taylor, 529 U.S. at 404-05, 120 S.Ct. at 1519. Upon individual examination, it is clear that none of the five grounds raised by Ramirez qualifies him for habeas relief. For purposes of cogency, Grounds 2 and 3 will be discussed in reversed order.

**1. The Admission of Bogan's Prior Recorded Testimony.**

Glenn Bogan was an associate of the defendant and a key witness in the murder investigation. As the Rhode Island Supreme Court found, he testified "extensively under direct, redirect and cross-examination about his relationship with and knowledge of Ramirez" at petitioner's first trial which ended in a mistrial on May 9, 2002. Ramirez, 936 A.2d at 1259-60, n.4. As he did before the Rhode Island Supreme Court, the



PDF created with pdfFactory trial version www.pdffactory.com

petitioner now alleges in this Court a violation of his Sixth Amendment right of confrontation when the trial justice declared Bogan unavailable at the second trial and allowed testimony from his first trial to be placed in evidence.

The facts that gave rise to this issue are set forth in the Rhode Island Supreme Court's opinion:

> The record discloses that Bogan was subpoenaed on August 30, 2002, and was uncooperative from the outset. During a mid-trial hearing, Bogan refused to testify and invoked his Fifth Amendment privilege against self-incrimination, and the trial justice appointed counsel for the witness. Significantly, the trial justice found that Bogan properly had invoked his privilege against self-incrimination, prompting the state to seek immunity for the witness. The prosecutor asked the trial justice to admonish the witness that he was under subpoena and not free to leave the courthouse. The trial justice directed the witness to remain in the courthouse until he was released by his attorney.
>
> Although the state began immunity proceedings, Bogan had other plans. Notwithstanding the trial justice's order that he remain available, Bogan disappeared. The trial justice issued a body attachment, and a mid-trial search for Bogan's whereabouts was undertaken by both sheriffs and police officers. The next day, after the prosecution recounted the state's efforts to locate Bogan, the trial justice declared him unavailable and his prior recorded testimony was read to the jury, Several days later, Bogan appeared at defense counsel's law office.
>
> On September 23, 2002, defense counsel informed the trial justice that Bogan had turned up at his law office that morning; he contended that, as a result, the Court should strike Bogan's testimony or require the State to seek immunity so that Bogan could be called as a defense witness. Clearly frustrated with Bogan's antics, the state objected to the motion to strike the testimony and refused to pursue a grant of immunity. At this point, although Bogan was present-apparently in the cellblock-and had counsel, he was nonetheless unavailable based on the trial justice's finding that he had a legitimate Fifth Amendment privilege not to testify.
>
> The trial justice denied the motion to strike Bogan's testimony and refused to order the state to seek immunity for the witness. Based on the record before us, we are satisfied that the trial justice properly declared the witness unavailable and did not err in admitting Bogan's prior testimony. The fact that the witness



PDF created with pdfFactory trial version www.pdffactory.com

> reappeared after his testimony was read to the jury does not alter this holding.

Ramirez, 936 A.2d at 1259-60

The right to confront those witnesses called to testify against him is a right guaranteed to every criminal defendant by the Sixth Amendment and, through the Fourteenth Amendment, to every defendant on trial in state court. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065 (1965). Nonetheless, as the Rhode Island Supreme Court noted in its decision in petitioner's case, "the right of confrontation is not absolute, but 'is tempered by the dictates of practicality and judicial economy." Ramirez, 936 A.2d at 1261 quoting State v. Sosa, 839 A.2d 519, 524 (R.I. 2003). Recognizing that "the Confrontation Clause reflects a preference for face-to-face confrontation at trial," the United States Supreme Court has clearly stated that the Government may not substitute prior testimony for live testimony, unless the government first demonstrates that a witness is unavailable for trial.[3] Ohio v. Roberts, 448 U.S. 56, 63, 100 S.Ct. 2531, 2538-39 (1980) ***overruled on other grounds,*** Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2004).

Like its federal counterpart, Fed. R. Evid. 804 (b)(1), Rhode Island Rule of Evidence 804(b)(1) provides that former recorded testimony of a witness is not excluded by the hearsay rule when that witness is unavailable to testify. State v. Sosa, 839 A.2d

[3] "Whatever else the term ["testimonial"] covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a formal trial." Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. at 1354, 1374 (2004). It should be noted at the outset that the defendant has never contested the "testimonial" nature of Bogan's prior testimony for Crawford purposes, which mandates that such testimony have been given against the same defendant at a prior trial and subject to cross-examination by the defense, nor did Ramirez ever allege that there was inadequate opportunity to cross-examine Bogan at his prior trial. 541 U.S. at 54, 124 S.Ct. at 1365.



PDF created with pdfFactory trial version www.pdffactory.com

519, 524 (R.I. 2003). The United States Supreme Court has interpreted this rule to allow a witness to be declared unavailable only after prosecutorial authorities have made "a good faith effort to obtain his presence at trial." Barber v. Page, 390 U.S. 719, 724-25, 88 S.Ct. 1318, 1322 (1968). The lengths to which the prosecution must go to produce a witness is a question of reasonableness." Roberts, 448 U.S. at 74, 100 S.Ct. at 2543 (quoting California v. Green, 399 U.S. 149, 189, n.22, 90 S.Ct. 1930, 1951 (1970) (Harlan, J., concurring). Thus, the ultimate question is "whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness."[4] *Id.*

In finding that Rhode Island authorities had made a good faith search for Glenn Bogan, the Rhode Island Supreme Court emphasized that, "a search is not judged by its results, but rather by its nature." Ramirez, 936 A.2d at 1264. Federal courts have long acknowledged this same principle. In Roberts, the Supreme Court explained that it is a good faith, not a perfect, effort to locate a witness that is required before he can be declared unavailable, as "one, in hindsight, may always think of other things." 448 U.S. at 75, 100 S.Ct. at 2544. And, as the United States Court of Appeals for the Tenth Circuit acknowledged in United States v. Eufracio-Torres, 890 F.2d 266, 270 (10th Cir. 1989), "the fact that the means utilized were unsuccessful does not mean that the government's efforts were not made in good faith."

After reviewing the record in petitioner's case, the Rhode Island Supreme Court held that Bogan's unavailability was constitutionally established. The decision noted that the witness's rights had been scrupulously honored, noting that following the trial

---

[4] In the present case, of course, there is no question that the prosecution did make such efforts; Bogan disappeared after the jury was sworn. Ramirez, 936 A.2d at 1259-60.



PDF created with pdfFactory trial version www.pdffactory.com

justice's finding that Bogan could legitimately exercise his Fifth Amendment privilege, the State acted in good faith to obtain immunity so that he was free to testify without fear of exposing himself to criminal charges arising out of his testimony. He was, moreover, ordered to remain by the trial justice, who issued a body attachment upon his disappearance. Ramirez, 936 A.2d at 1263-63.

The Rhode Island Supreme Court also noted the trial justice's finding that the State made "diligent efforts" and "significant" search to locate Bogan, an expedition which included a search of several locations he was known to frequent, including workplaces and residences of relatives, before that witness was declared unavailable and his prior testimony was allowed into evidence.[5] Also significant was the defense's failure to cite for the Court any deficiencies in the State's search efforts *until after the witness's reappearance* several days after his testimony was read. 936 A.2d at 1261-62

Because Ramirez has failed to demonstrate that the Rhode Island Supreme Court's findings of fact were unreasonable, the State respectfully submits that for habeas purposes, these factual findings are entitled to due deference by this Court. Rashad, 35-39. Moreover, Ramirez has failed to demonstrate that the Rhode Island Supreme Court's decision was contrary to, or involved an unreasonable application of federal law. See Hamilton v. Morgan, 474 F.3d 854 (6th Cir. 2007) (Affirming denial of habeas relief to petitioner alleging inadequate efforts to procure witness prior to trial judge's finding that he was unavailable and subsequent admission of his testimony from preliminary hearing,

[5] The Rhode Island Supreme Court will not disturb on appeal a finding of reasonable diligence and good faith on the part of the proponent of the testimony absent and affirmative showing that the trial justice abused his discretion. State v. Brown, 744 A.2d 831, 835 (R.I. 2000)



PDF created with pdfFactory trial version www.pdffactory.com

after prosecution showed that witness was in the armed forces overseas, and logistical problems made his return in time for trial impossible)

**Ground 3. The "Barring" of Bogan as a Defense Witn**

The State submits that this complaint requires little response. After Bogan's reappearance at defense counsel's office in the midst of trial, he declared his intention to invoke the Fifth Amendment, as the trial justice found he could legitimately do. Counsel admitted to the trial justice that his client intended to invoke the Fifth Amendment "to each and every question I asked of him." Ramirez, 936 A.2d at 1265. It is established precedent, as the Rhode Island Supreme Court noted in its decision, that "when a witness refuses to testify and invokes a legitimate Fifth Amendment privilege, the Sixth Amendment Confrontation Clause no longer applies because the witness is unavailable." Ramirez, 936 A.2d at 1254 citing California v. Green, 399 U.S. 149, 167-68, 90 S.Ct. 1930, 1939-40 (1970). `It is equally well-settled that "a defendant's Sixth Amendment right to compulsory process does not trump a witness's Fifth Amendment right against self-incrimination." United States v. Mabrook, 301 F.3d 503, 506 (7th Cir. 2002). To this end, courts are permitted to prevent a party from calling a witness solely to have him invoke his privilege against self-incrimination in front of the jury. United States v. George, 778 F.2d 556, 562-63 (10th Cir. 1985).

The trial justice had no power to order that the State seek immunity for Bogan, as, under State law, only the Department of the Attorney General may seek a grant of immunity. R.I.G.L. § 12-17-15; State v. Clark, 576 A.2d 1202, 1205-06 (R.I. 1990). Moreover, the Rhode Island Supreme Court properly reasoned that this case was not one in which the prosecution declined to seek immunity for Bogan in order to obtain any



PDF created with pdfFactory trial version www.pdffactory.com

tactical advantage. United States v. Ebbers, 458 F.3d 110, 118-20 (2nd Cir. 2002) (defendant alleged discriminatory use of immunity by prosecution). Indeed, in the face of the witness's intimations that he would testify that his incriminating testimony from the first trial was a web of lies, the State, in good faith, did seek immunity and the witness responded by fleeing the courthouse. As the Rhode Island Supreme Court reasoned, the blame for that action cannot rest with the State. Ramirez, 936 A.2d 1254, 1264-65. See Lowery v. Anderson, 225 F.3d 833 (7th Cir. 2000) (District Court properly denied habeas relief to petitioner who claimed that state judge erred in finding that witness from his first trial was unavailable to testify at his re-trial and admitting testimony from initial trial, after, despite attempts to get him to testify and being held in contempt, witness refused to do so; state prosecutors were not constitutionally obliged to compel testimony by threatening further prosecution, and "the fact that more, theoretically, could have been done" to persuade him to testify, including threats of further prosecution, did not warrant habeas relief, as such decisions lay within the State's discretion).

Because the Rhode Island Supreme Court's decision followed federal law precisely, Ramirez has failed to establish grounds for habeas relief.

**Ground 2. The Admission of Limbaugh's Testimony About Sargent's Statement That He Was An Informant.**

The trial justice allowed witness Alfred Limburg to testify that the victim told him he was an informant for the Rhode Island State Police pursuant to R.I.R.Evid. 804(c), which provides as follows:

> ***Declaration of a Decedent Made In Good Faith.*** A declaration of a deceased person shall not be inadmissible in evidence as hearsay if the court finds that it was made in good faith before the



PDF created with pdfFactory trial version www.pdffactory.com

> commencement of the action and upon the personal knowledge of the declarant.

After examining the admissibility of the statement in light of Crawford and Davis v. Washington, 547 U.S. 813, 126 S.Ct. 2266 (2006), the Rhode Island Supreme Court upheld the trial court's ruling, having found that the statement possessed the hallmarks of trustworthiness, and, as a casual remark made to an acquaintance, not testimonial in nature.[6] Ramirez, 936 A.2d at 1266-67. The evidence elicited at trial clearly established that Limburg and Sargent had a business relationship, and, as the Court noted, it is difficult to imagine why Sargent would have made such a statement if it was not true, and it also strains credulity to believe that he anticipated the use of his statement as evidence at a trial, particularly the trial of his own killer. ***Id.***

This is an interpretation in line with federal courts. See United States v. Williams, 506 F.3d 151, 156-57 (2nd Cir. 2007) (statement by co-conspirator to acquaintance admitting complicity in homicide was not testimonial for purposes of Confrontation Clause analysis); United States v. Malpica-Garcia, 489 F.3d 393, 397-98 (1st Cir. 2007) (there was no violation of right to confrontation by admission of statements made by co-conspirators in drug trade when said statements were part of private conversations or casual remarks made "without expectation that the information would be saved and used at trial").

---

[6] In Davis, the Supreme Court specifically excluded such statements from those considered "testimonial" in nature; "an accuser who makes a formal statement to a government officer bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." 126 S.Ct. at 2274 citing Crawford, 541 U.S. at 51, 124 S.Ct. 1354.



PDF created with pdfFactory trial version www.pdffactory.com

Even if the admission of the testimony in issue was considered erroneous, it would not warrant habeas relief. Habeas relief is appropriate only when a petitioner successfully demonstrates that the error was of constitutional dimension and had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623, 637, 113 S.Ct. 1710, 1714 (1993). The Rhode Island Supreme Court, having found that Limburg's testimony was properly admitted, went a step further and found that any error in its introduction would have been harmless in light of the "abundant evidence" supporting the jury verdict. Ramirez, 936 A.2d at 1267. Ramirez has again failed to meet the standard for the issuance of the writ.

**Ground 4. The Denial of Defendant's Motion For a Mistrial**

The next allegation assigns constitutional error to the trial justice's denial of defendant's motion to pass the case because of juror bias. The petitioner's claim was based on two instances. During deliberations, a juror asked a sheriff if the members of the panel would "be all right" following the return of the verdict. Then, a juror overheard one sheriff tell a colleague that they were directed to report to Justice Darigan's courtroom when the verdict was reached. Upon hearing reports of these incidents, Justice Darigan called the jury back to the courtroom and assured the members that their safety was assured, regardless of the verdict reached. Ramirez, 936 A.2d at 1267.

The Rhode Island Supreme Court declined to disturb the trial justice's denial of the motion for a mistrial, citing the United States Supreme Court's holding that, "due process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable." Ramirez, 936 at 1267. citing Smith v. Phillips, 455 U.S. 209, 217, 102 S.Ct.



PDF created with pdfFactory trial version www.pdffactory.com

940, 946 (1982). To this end, a defendant who alleges jury taint must show actual bias on the part of the juror. United States v. Zelinka, 862 F.2d 92, 95 (6th Cir. 1988). See also United States v. Small, 423 F.3d 1164, 1178-80 (10th Cir. 2005) (affirming trial court's denial of mistrial after member of the venire expressed aloud concerns for his safety and that of his family, as trial justice's admonition to the members of the panel was sufficient to dispel any prejudice).

Defendant has failed to assert any error of constitutional magnitude with this issue.

**Ground 5. Imposition of Enhanced Sentence Based on Habitual Offender Statute.**

The final ground on which Ramirez bases his petition requires only a brief response. The petitioner complains that the enhanced portion of the sentence was unconstitutionally imposed. R.I.G.L. § 12-19-21 authorizes such an enhancement for those persons previously convicted of two or more felonies. The petitioner argues that the trial justice lacked authority to apply the enhancement because the facts were not previously found by the jury in accordance with the United States Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000), which mandated that "*other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Ramirez, 936 A.2d at 1268-69 quoting Apprendi, 530 U.S. at 490, 120 S.Ct. at 2348.

This ground was procedurally waived for habeas review because, as the Rhode Island Supreme Court found, no Sixth Amendment challenge was raised at the time of sentencing. Ramirez, 936 A.2d at 1269.



PDF created with pdfFactory trial version www.pdffactory.com

Furthermore, imposition of the sentence does not demonstrate either an unreasonable application of federal law, nor is it contrary to clearly established federal law. As the Rhode Island Supreme Court reasoned in its opinion, the United States Supreme Court, in United States v. Almadarez-Torres, 523 U.S.224, 228, 118 S.Ct. 1219, defined the prior conviction exemption when it distinguished between an element of the offense charged and a sentencing factor, reiterating that the former needed to be proved to a jury, while the latter allows a judge to impose an enhanced sentence absent a specific jury finding. Ramirez, 936 A.2d at 1269-70. See also Cunningham v. California, _U.S. _ , 127 S.Ct. 856, 868 (2007) (As this Court's decisions instruct, the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, ***other than a prior conviction***, not found by the jury or admitted by the defendant). [Emphasis supplied].

Ramirez's claim is based on nothing more than the belief that the doctrine of exempting previous convictions from jury-finding requirement in sentencing schemes is doomed precedent. It has no basis in habeas law, however. As a matter of fact, last year, the United States Supreme Court issued a decision in James v. United States, _U.S.._, 127 S.Ct. 1586 (2007), in which it acknowledged its prior holdings that "prior convictions need not be treated as an element of the offense for Sixth Amendment purposes." 127 S.Ct. at 1600, n.8. See also United States v. Pineda-Arrellano, 492 F.3d 624, 625 (5th Cir. 2007) (" Almendarez-Torres remains binding precedent until and unless it is officially overruled by the Supreme Court…a majority of the Supreme Court has reaffirmed Almendarez –Torres in James v. United States, 127 S.Ct. 1286). Thus, there



PDF created with pdfFactory trial version www.pdffactory.com

was no unreasonable application of federal law involved in the imposition of the enhanced sentence.

**CONCLUSION**

For the reasons set forth above, the State of Rhode Island, the designated Respondent, respectfully submits that the petitioner's petition for writ of habeas corpus should be denied and dismissed.

Respectfully Submitted,

**STATE OF RHODE ISLAND**
By Its Attorneys,

**PATRICK C. LYNCH**
**ATTORNEY GENERAL**

/s/ Jane M. McSoley

**JANE M. McSOLEY, #3136**
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400

**CERTIFICATION**

Pursuant to AP 10 of this Court, effective August 1, 2006, I hereby certify that on June 12, 2008, I filed this document electronically and that it is available for viewing and downloading from the ECF system. I also certify that I sent a copy of the within motion to the following by first-class mail on the same date: Ricardo Ramirez, Pro Se, #56835, Maximum Security, Hope 1, H1-07, P.O. Box 8273, Cranston, RI 02920.

/s/ Jane M. McSoley



PDF created with pdfFactory trial version www.pdffactory.com