UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RICARDO RAMIREZ,                          :
                    Petitioner,            :
                                           :
        v.                                 :        CA 08-205 S
                                           :
ASHBEL T. WALL, Director of                :
the Rhode Island Department                :
of Corrections,                            :
                    Respondent.            :

## REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

Ricardo Ramirez ("Ramirez" or "Petitioner"), *pro se,* filed this Application[] for Habeas Corpus under 28 U.S.C. Section 2254 (Document ("Doc.") #1) ("Petition").  The Attorney General of the State of Rhode Island ("Attorney General"), designated a party-respondent, has filed a motion to dismiss the petition.  See State of Rhode Island's Motion to Dismiss Petition under 28 USC § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. #3) ("Motion to Dismiss").  Ramirez filed a "[t]raverse," which the Court treats as an objection, to the Motion to Dismiss.  See Petitioner's Traverse to State's Response (Doc. #4) ("Objection").  The Motion to Dismiss has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  I have determined that no hearing is necessary.  For the reasons that follow, I recommend that the Motion to Dismiss be granted.

## I.  Facts

On December 6, 2006, Ramirez was sentenced to a term of life imprisonment after having been found guilty of first degree murder.  See State v. Ramirez, 936 A.2d 1254, 1257 (R.I. 2007).  The facts, as stated by the Rhode Island Supreme Court are

set forth below:

The events leading up to this brutal homicide occurred over twenty-five years ago.  On May 5, 1982, two college students decided to walk to a cemetery in North Smithfield and found themselves in a ravine near some railroad tracks.  It was there, at the bottom of a thirty-foot hill, that they came upon the partially clad remains of a decayed body.  The two brothers alerted the North Smithfield police who, in turn, notified the state medical examiner.  At the scene, the medical examiner located a bullet hole in the back of the victim's skull and found a billfold with a driver's license bearing the name William Sargent (Sargent) in the decedent's pants pocket.  The medical examiner later used dental records to positively identify Sargent's body.  Doctor Elizabeth Laposata, the chief medical examiner for the State of Rhode Island, testified at trial that the manner of Sargent's death was an "execution style" homicide. Although the body was found in 1982, the facts surrounding Sargent's disappearance and murder were slow to emerge.

Despite an intensive police investigation, the murder remained unsolved for many years.  It was not until late 2000, that the case was assigned to Det. Stephen Riccitelli (Det. Riccitelli) of the North Smithfield Police Department and Det. John Killian of the Rhode Island State Police, whose efforts resulted in the arrest and indictment of defendant for this crime.  Detective Riccitelli located Harold Marzini (Marzini), a retired Woonsocket police detective, who confirmed that Sargent had been a confidential police informant and had supplied Marzini with information on a regular basis.  Marzini also recalled Sargent's associates, who were known to the police-Alfred Limburg (Limburg), Glen Bogan (Bogan), and Ramirez-and he described these men as frequent patrons of Mister Donut and the Court Street Pub in Woonsocket. These men also associated with defendant's cousin, Henry Cassidy (Cassidy), when he was not in jail.[FN1]  From this colorful cast of characters, Det. Riccitelli was able to piece together the events leading to this brutal slaying.

FN1. Cassidy was serving a twenty-year sentence for manslaughter at the time of trial.

The year was 1981; Ramirez, Bogan, and Sargent were engaged in a stolen-automobile operation in which they dismantled stolen vehicles in a "chop shop."[FN2]    The

facility was based in Blackstone, Massachusetts, in a garage rented by Limburg, who was an automobile dismantler and junkyard operator by trade. Limburg testified that he rented this garage to Sargent for approximately two months, around April 1981, until he discovered that Sargent was dealing in stolen automobiles at his garage. Limburg went to Sargent's home in Woonsocket, intending to put an end to the criminal activity; upon his arrival Sargent was concluding a telephone conversation. When Limburg asked Sargent about the phone call, Sargent informed him that he had been speaking with the Rhode Island State Police and that he was an informant. Unimpressed, Limburg told Sargent that he was closing the garage and that he should remove his belongings.

> FN2. A "chop shop" is defined in federal law as:
>
> "any building, lot, facility, or other structure or premise where one or more persons engage in receiving, concealing, destroying, disassembling, dismantling, reassembling, or storing any passenger motor vehicle or passenger motor vehicle part which has been unlawfully obtained in order to alter, counterfeit, deface, destroy, disguise, falsify, forge, obliterate, or remove the identity, including the vehicle identification number or derivative thereof, of such vehicle or vehicle part and to distribute, sell, or dispose of such vehicle or vehicle part in interstate or foreign commerce." 18 U.S.C. § 2322.
>
> We agree with this characterization.

Meanwhile, Ramirez began to suspect that Sargent was a police informant. The defendant introduced Sargent to his cousin, Cassidy, and thereafter the men frequently met at Mister Donut. However, Cassidy, who at the time of trial was imprisoned at the Adult Correctional Institutions, suspected that Sargent was cooperating with law enforcement because he frequently used the pay telephone at the Mister Donut. Cassidy shared his suspicion with defendant and told Ramirez that he believed Sargent to be an informant because "he look[ed] like he [was] an undercover cop" and because he was "always" using a pay telephone.

The defendant began to investigate Sargent's informant

activities, starting with Limburg. According to Limburg, "[Ramirez] wanted to know if William Sargent was a police informant and if he was, he would kill him." Although Limburg refused to disclose what he knew, Ramirez persisted. On April 27, 1981, while at a Woonsocket bar, defendant repeatedly asked Limburg if Sargent was an informant. Limburg was not forthcoming; defendant was undeterred.

That evening, after returning home from a night of drinking, Limburg was awakened by Ramirez, who told Limburg that Sargent had named him as the informant and they needed to take action. Although apparently intoxicated, the two men set off to Sargent's house to "straighten this out." However, the pickup truck they were driving, registered to Sargent Artesian Well Company, crashed into a fire hydrant. Undaunted, they returned to Limburg's home to retrieve his van, but this trip also was unsuccessful-the vehicle was stopped by the Blackstone police and the two men were arrested. According to Limburg, they met Sargent later that morning and that was the last time he saw Sargent. Limburg did not cooperate with the police because he was afraid of Ramirez.

Bogan, another confederate in the stolen-car business, testified at the first trial and recounted similar conversations with Ramirez about Sargent and whether he was a police informant. Bogan recalled Ramirez telling him that "he heard [Sargent] was a rat." According to Bogan, defendant began mentioning that Sargent was "working for the cops" and "he'd take him out before he'd let him take him down."

In the ensuing weeks, defendant's obsession with Sargent's informant activities culminated in his murder. During the first trial, Bogan testified that late one evening Ramirez arrived at his home in blood-stained clothing. Bogan gave him clean clothes, and Ramirez disclosed that "he took Billy Sargent out" by shooting him in the head. Ramirez gave Bogan a plastic bag containing his bloody clothing with instructions to throw the bag into a nearby river; Bogan did so the next morning.[FN3] Bogan, like Limburg, feared Ramirez and refused to cooperate with the police.

> FN3. The defendant also emptied the shell casings from a small revolver that he intended to "cut up"

4

by bringing it to a machine shop in Connecticut.

The record discloses that Ramirez talked about the murder to others, including his brother-in-law, George Joyal (Joyal), as well as his former wife. Ramirez told Joyal that he had killed a man because he believed him to be an undercover Massachusetts narcotics officer. Ramirez told Joyal that he and the victim had walked to a ravine where he shot him twice with a .38-caliber gun. Like Limburg and Bogan, Joyal feared Ramirez and did not contact the police. In fact, Joyal told his sister the story, in the event that something should happen to him.

Based upon the investigation by Det. Riccitelli, the case was presented to a grand jury that returned a one-count indictment charging defendant with Sargent's murder.

State v. Ramirez, 936 A.2d at 1257-59 (alterations in original).

## II. Travel

The Rhode Island Supreme Court denied Petitioner's direct appeal on December 17, 2007. See State v. Ramirez, 936 A.2d at 1257. He filed the instant action in this Court on May 28, 2008. See Docket. On May 29, 2008, District Judge William E. Smith ordered the Attorney General of the State of Rhode Island (the "State") to file its response to the Petition. See Order (Doc. #2). In compliance with this Order, on June 12, 2008, the State filed the instant Motion to Dismiss. See Docket. Petitioner filed his Objection on June 24, 2008. See id. Thereafter, the Court took the matter under advisement.

## III. Habeas Corpus Law

The applicable standard for this Court to consider claims asserted in a state prisoner's § 2254 petition is set forth in the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"). See Rashad v. Walsh, 300 F.3d 27, 30 (1st Cir. 2002)(noting that where "underlying case involves a state prisoner's attempt to secure a writ of habeas corpus, our task proceeds under the deferential standard of review mandated by the [AEDPA]"). The AEDPA

significantly limits the scope of federal habeas review.  <u>See</u>
<u>Bell v. Cone</u>, 535 U.S. 685, 693, 122 S.Ct. 1843 (2002)
(explaining that the AEDPA "modified a federal habeas court's
role in reviewing state prisoner applications in order to prevent
federal habeas 'retrials' and to ensure that state-court
convictions are given effect to the extent possible under law");
<u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495 (2000)("In
sum, [28 U.S.C.] § 2254(d)(1) places a new constraint on the
power of a federal habeas court to grant a state prisoner's
application for a writ of habeas corpus with respect to claims
adjudicated on the merits in state court."); <u>Sanna v. Dipaolo</u>,
265 F.3d 1, 15 (1st Cir. 2001)("The parameters for granting
habeas relief historically have been quite narrow, and the AEDPA
standard of review circumscribed those parameters even
further.").  Under 28 U.S.C. § 2254(d), the writ may not be
granted unless the state court's adjudication of the claim:

> (1) resulted in a decision that was **contrary to**, or
> involved an **unreasonable application of**, clearly
> established Federal law, as determined by the Supreme
> Court of the United States;  or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(bold added); <u>see also</u> <u>Rashad v. Walsh</u>, 300
F.3d at 34 (stating that a federal court may grant habeas relief
for a state prisoner only if the state court proceeding falls
within the parameters of either subsection).

The "contrary to" and "unreasonable application" clauses of
§ 2254(d)(1) have independent meaning.  <u>See</u> <u>Bell v. Cone</u>, 535
U.S. at 694; <u>Williams v. Taylor</u>, 529 U.S. at 404-05.  "[A] state
court decision is considered contrary to Supreme Court precedent
only if it either applies a test that is inconsistent with one
announced by the Court or reaches the opposite conclusion on

materially indistinguishable facts." <u>Rashad v. Walsh</u>, 300 F.3d at 34-35 (citing <u>Williams v. Taylor</u>, 529 U.S. at 405-06).  The "unreasonable application" clause affords relief to a state prisoner "if the state court applies the correct legal standard in an objectively unreasonable manner, unreasonably extends a Supreme Court precedent to an inappropriate context, or fails to extend such a precedent to an appropriate context." <u>Id.</u> at 35 (citing <u>Williams v. Taylor</u>, 529 U.S. at 407-08).  In deciding whether a state court decision fits within the scope of this second clause, a federal court evaluates "the strength of the state court's ultimate conclusion, rather than its announced rationale ...." <u>Id.</u> (citing <u>Ouber v. Guarino</u>, 293 F.3d 19, 34 (1st Cir. 2002)).  "Importantly, the test does not demand infallibility: a state court's decision may be objectively reasonable even if the federal habeas court, exercising its independent judgment, would have reached a different conclusion." <u>Id.</u> (citing <u>Williams v. Taylor</u>, 529 U.S. at 411; <u>Williams v. Matesanz</u>, 230 F.3d 421, 425 (1st Cir. 2000)).  It is not enough that the federal habeas court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Williams v. Taylor</u>, 529 U.S. at 411; <u>accord</u> <u>Horton v. Allen</u>, 370 F.3d 75, 80 (1st Cir. 2004)("To be an unreasonable application of governing law, the state court's determination must not only be incorrect but also be objectively unreasonable.")(citing <u>Williams</u>); <u>McCambridge v. Hall</u>, 303 F.3d 24, 36 (1st Cir. 2002)(same).  The Court's focus "is not how well reasoned the state court decision is, but whether the outcome is reasonable." <u>Hurtado v. Tucker</u>, 245 F.3d 7, 20 (1st Cir. 2001).

The determination of whether the state court decision in question passes this test "must be decided primarily on the basis

of Supreme Court holdings that were clearly established at the time of the state court proceedings." Rashad v. Walsh, 300 F.3d at 35 (citing Williams v. Taylor, 529 U.S. at 412). Nevertheless, cases from lower federal courts which are factually similar "may inform such a determination, providing a valuable reference point when the relevant Supreme Court rule is broad and applies to a kaleidoscopic array of fact patterns." Id. (citing Ouber v. Guarino, 293 F.3d at 26; O'Brien v. Dubois, 145 F.3d 16, 25 (1st Cir. 1998)).

The AEDPA also permits relief from a state court judgment if that judgment is based on an unreasonable determination of the facts. See id. (citing 28 U.S.C. § 2254(d)(2)). However, "the state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary." Id. (quoting Ouber v. Guarino, 293 F.3d at 27; see also Sanna v. Dipaolo, 265 F.3d at 7 (stating that the standard applies only to the determination of "basic, primary, or historical facts")). Thus, the petitioner's burden in this regard is "heavy," Rashad v. Walsh, 300 F.3d at 35, and if he fails to carry it "a federal habeas court must credit the state court's findings of fact—and that remains true when those findings are made by a state appellate court as well as when they are made by a state trial court," id. (citing King v. Bowersox, 291 F.3d 539, 540 (8th Cir. 2002); Everett v. Beard, 290 F.3d 500, 507 (3rd Cir. 2002)).

## IV.  Discussion

### A.  Grounds for Relief

Petitioner alleges five grounds for relief in his Petition. First, he claims that his Sixth Amendment right of confrontation was violated when the trial justice allowed the prior recorded testimony of an unavailable witness to be read to the jury. See Petition at 6. Second, Petitioner contends that the trial

justice erred by allowing Limburg to testify about Sargent's disclosure that he (Sargent) was an informant.  <u>See</u> <u>id.</u> at 7. Third, Petitioner alleges that his Sixth Amendment right to present a defense was violated when the trial justice refused to allow his attorney to question Bogan in the presence of the jury because Bogan intended to assert his Fifth Amendment privilege against self-incrimination.  <u>See</u> <u>id.</u>  Fourth, Petitioner asserts that the trial justice committed reversible error when he refused to declare a mistrial after a juror asked a sheriff if the jury would be safe when they returned a verdict and also after one or more jurors heard sheriffs talking about being called to the trial justice's courtroom when the verdict was read.  <u>See</u> <u>id.</u> Lastly, Petitioner challenges the imposition of an enhanced sentence for being a habitual criminal on the ground that this fact was not put before the jury as allegedly required by <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 120 S.Ct. 2348 (2000).  <u>See</u> <u>id.</u> at 8.  The Court discusses these claims below, although in a slightly different order since his first and third claims are related.

**B.  Analysis**

**1.  Use of Prior Recorded Testimony**

**a.  Specific Facts**

During the trial, the trial justice declared that Bogan was unavailable and allowed the state to introduce his testimony from an earlier proceeding that had ended in a mistrial.  <u>State v. Ramirez</u>, 936 A.2d at 1259.  The facts surrounding the trial justice's declaration are contained in the Rhode Island Supreme Court's opinion:

> The record discloses that Bogan was subpoenaed on August 30, 2002, and was uncooperative from the outset.[FN5] During a mid-trial hearing, Bogan refused to testify and invoked his Fifth Amendment privilege against self-incrimination, and the trial justice appointed

counsel for the witness. Significantly, the trial justice found that Bogan properly had invoked his privilege against self-incrimination, prompting the state to seek immunity for the witness. The prosecutor asked the trial justice to admonish the witness that he was under subpoena and not free to leave the courthouse. The trial justice directed the witness to remain in the courthouse until he was released by his attorney.

> FN5. Bogan's reluctance to testify was no surprise to the parties in this case. The witness failed to appear voluntarily for the first trial; however, after a body attachment was issued, he appeared and testified.

Although the state began immunity proceedings, Bogan had other plans. Notwithstanding the trial justice's order that he remain available, Bogan disappeared. The trial justice issued a body attachment, and a mid-trial search for Bogan's whereabouts was undertaken by both sheriffs and police officers. The next day, after the prosecution recounted the state's efforts to locate Bogan, the trial justice declared him unavailable and his prior recorded testimony was read to the jury. Several days later, Bogan appeared at defense counsel's law office.

On September 23, 2002, defense counsel informed the trial justice that Bogan had turned up at his law office that morning; he contended that, as a result, the Court should strike Bogan's testimony or require the state to seek immunity so that Bogan could be called as a defense witness. Clearly frustrated with Bogan's antics, the state objected to the motion to strike the testimony and refused to pursue a grant of immunity. At this point, although Bogan was present-apparently in the cellblock-and had counsel, he was nonetheless unavailable based on the trial justice's finding that he had a legitimate Fifth Amendment privilege not to testify.

The trial justice denied the motion to strike Bogan's testimony and refused to order the state to seek immunity for the witness. Based on the record before us, we are satisfied that the trial justice properly declared the witness unavailable and did not err in admitting Bogan's prior testimony. The fact that the witness reappeared after his testimony was read to the jury does not alter this holding.

State v. Ramirez, 936 A.2d at 1259-60.

### b.   Specific Law

The Sixth Amendment's right of an accused to confront the witnesses against him is a fundamental right and is made obligatory on the states by the Fourteenth Amendment.  Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065 (1965).  "The Amendment contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him."  Giles v. California, ___ U.S. ___, 128 S.Ct. 2678, 2682 (2008)(citing Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354 (2004)); see also Ohio v. Roberts, 448 U.S. 56, 65, 100 S.Ct. 2351 (1980) (explaining that "in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity ...[1] the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant").  Thus, despite the preference for face-to-face accusation, "there has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant."  Barber v. Page, 390

---

[1] In Crawford v. Washington, 541 U.S. 36, 126 S.Ct. 1354 (2004), the Supreme Court overruled that portion of Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2351 (1980), which "allow[ed] a jury to hear evidence, untested by the adversary process, based on a mere judicial determination of reliability."  Crawford v. Washington, 541 U.S. at 62.  The Court concluded that "[w]here testimonial evidence is at issue ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."  Id. at 68; see also id. at 68-69 ("Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.").  Thus, this Court in quoting Roberts above omits wording invalidated by Crawford.

U.S. 719, 722, 88 S.Ct. 1318 (1968).

### c. Application

Petitioner makes no argument that the decision of the Rhode Island Supreme Court relative to the use of Bogan's prior recorded testimony was "contrary to ... clearly established Federal Law ...." 28 U.S.C. § 2254(d)(1).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.

Williams v. Taylor, 529 U.S. at 412-13; see also McCambridge v. Hall, 303 F.3d at 36 (quoting Williams).  Here the state supreme court recognized that Roberts holds that a witness is not "unavailable" for purposes of the exception to the confrontation requirement unless the prosecution authorities have made a good-faith effort to obtain his presence at trial.  State v. Ramirez, 936 A.2d at 1261 (citing Roberts for the standard the trial justice must use "[i]n determining if a witness is unavailable").  Thus, the state supreme court applied the proper rule by considering whether the prosecution had made a good faith effort to obtain Bogan's presence.[2]  See id. at 1261-64 (discussing prosecution's efforts to locate Bogan and rejecting argument that state failed to make good faith effort); see also id. at 1260 (finding that "the trial justice properly declared the witness unavailable and did not err in admitting Bogan's prior testimony").

Therefore, the issue before this Court is whether the state supreme court's determination that Bogan's prior recorded

---

[2] There also is no Supreme Court case involving "materially indistinguishable facts" that is contrary to the result reached by the state supreme court.

testimony could be read to the jury was: 1) an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  See 28 U.S.C. § 2254(d).  As noted above, the state supreme court concluded that the trial justice properly found that Bogan was unavailable and did not err in admitting his prior testimony.  See State v. Ramirez, 936 A.2d at 1260.  Petitioner does not argue that this conclusion resulted from an unreasonable application of clearly established federal law, and this Court sees no basis for such an argument.  To the extent that Petitioner may contend to the contrary, such contention is rejected.  See California v. Green, 399 U.S. 149, 165, 90 S.Ct. 1930 (1970)("This Court long ago held that admitting the prior testimony of an unavailable witness does not violate the Confrontation Clause.").

Turning to the remaining possibility, i.e., that the state supreme court's determination resulted from an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, this Court is unable to make such a finding.  With regard to Bogan's unavailability, the state supreme court identified the following facts as supporting its conclusion that the trial justice properly found that Bogan was unavailable and that the prosecution had made a good faith effort to secure his attendance.  First, after Bogan refused to testify and invoked his privilege against self-incrimination during a mid-trial hearing, the prosecutor asked the trial justice to admonish him that he was under subpoena and not free to leave the courthouse.  See State v. Ramirez, 926 A.2d at 1260.  The trial justice directed Bogan to remain in the courthouse until he was released by his attorney (whom the trial justice had appointed to

13

represent Bogan).  <u>See</u> <u>id.</u>  Despite this directive, Bogan
disappeared, and the trial justice issued a body attachment.  <u>See</u>
<u>id.</u>  A mid-trial search was then undertaken by both sheriffs and
police.  <u>See</u> <u>id.</u>  The next day, the prosecution recounted the
state's efforts to locate Bogan.  <u>See</u> <u>id.</u>  It was at this point
that the trial justice declared Bogan unavailable and had his
prior recorded testimony read to the jury.  <u>See</u> <u>id.</u>  This Court
sees no basis for finding that the state supreme court's
determination of these facts was unreasonable, and Petitioner
suggests none.  Accordingly, to the extent Petitioner contends
that the state supreme court's determination that Bogan was
unavailable and that the state had made a good faith effort to
secure his presence violates Petitioner's federal constitutional
rights, such contention is rejected.[3]  <u>Cf.</u> <u>Hamilton v. Morgan</u>,

_____

[3] In his direct appeal Petitioner argued that the state's search for Bogan was not in good
faith because it had notice of his reluctance to testify and, therefore, allegedly had an affirmative
duty to prevent him from disappearing and failed to make reasonable efforts to prevent his
disappearance in the first place.  <u>State v. Ramirez</u>, 936 A.2d at 1263.  He does not make that
argument here.  <u>See</u> Petition; Objection.  However, even if he had, this Court would
reject it for the same reasons expressed by the Rhode Island Supreme Court.  <u>See</u> <u>State v.</u>
<u>Ramirez</u>, 936 A.2d at 1263-64.  As noted in the decision, Petitioner's case is distinguishable
from the facts in <u>United States v. Mann</u>, 590 F.2d 361 (1st Cir. 1978).  Here there is no
suggestion that the state acted imprudently with respect to insuring Bogan's continued
attendance and testimony at trial.  "[T]he state not only sought immunity for the witness, but also
the prosecutor repeatedly asked the trial justice to order that the subpoena remain in force and to
remind the witness that he was not free to leave until he was excused."  <u>State v. Ramirez</u>, 936
A.2d at 1263.  "The law does not require the government to utilize an absolute means of
attempting to assure the appearance of a witness, only a reasonable means."  <u>United States v.</u>
<u>Eufracio-Torres</u>, 890 F.2d 266, 270 (10th Cir. 1989).  Here, the state courts' determination that
the prosecution used reasonable means to secure Bogan's continued attendance at the trial is not
an unreasonable determination of the facts in light of the evidence presented in the state court
proceeding.
    Petitioner also does not challenge in this action the trial justice's failure to conduct an
evidentiary hearing relative to Bogan's unavailability.  <u>See</u> Petition; Objection.  However, again,
had such a challenge been made, this Court would find it unpersuasive.  <u>See</u> <u>United States v.</u>
<u>Sindona</u>, 636 F.2d 792, 804 (2nd Cir. 1980) ("Although it would have been preferable to present
the court with affidavits, the fact that the trial counsel for the Government presented the factual

474 F.3d 854, 855 (6th Cir. 2007)(affirming denial of habeas
corpus petition because decision of Tennessee courts to allow
prior testimony of a witness deemed unavailable for trial "was
neither 'contrary to' nor 'an unreasonable application of'
federal law").

### 2. Refusal to Allow Bogan to Testify

Petitioner complains that he was not permitted to call Bogan
as a witness after Bogan appeared at the office of Petitioner's
attorney several days later and was subsequently detained in the
superior court cellblock.  See Objection at 1.  At that point,
Petitioner argues, Bogan was no longer unavailable, and
Petitioner should have been permitted to call him as witness.
See id. at 2 ("The bottom line is that the state had Mr. Bogan in
the cellblock ....").  According to Petitioner, he should have
been permitted to place Bogan on the witness stand and, if Bogan
"pled the 5th," then so be it, but the jury could have made their
own decision based on all the facts."  Id.

The Rhode Island Supreme Court's consideration of this issue
is reproduced below:

> The defendant next argues that the trial justice erred in
> refusing to allow him to call Bogan as a defense witness
> notwithstanding his Fifth Amendment privilege.  The trial
> justice would not allow Bogan to be called before the
> jury in order to invoke his Fifth Amendment privilege.
> Defense counsel argued that although Bogan vowed to
> invoke his privilege "to each and every question I asked
> of him," he insisted that "there are some questions I can
> ask which don't need the Fifth Amendment" and further,
> that defendant had a right to call Bogan "even if he
> pleads the Fifth Amendment to certain questions before
> the jury."  Counsel is mistaken.
>
> We need not dwell long on this issue because the trial
> justice properly found that Bogan was unavailable as a

situation orally is not fatal.  It is proper for the court to accept, in its discretion, the
representations o[f] counsel with respect to the unavailability of a witness.").

matter of law.  When a witness refuses to testify and
invokes a legitimate Fifth Amendment privilege, the Sixth
Amendment Confrontation Clause no longer applies because
the witness is unavailable.  <u>California v. Green</u>, 399
U.S. 149, 167-68, 90 S.Ct. 1930 ... (1970).    A
defendant's "Sixth Amendment right to the compulsory
process does not trump [a witness's] Fifth Amendment
right against self-incrimination." <u>United States v.
Mabrook</u>, 301 F.3d 503, 506 (7th Cir. 2002).  Thus, after
Bogan reappeared, the trial justice did not err in
precluding defendant from calling him as a witness.  In
[<u>State v.] Ducharme</u>, 601 A.2d [937,] at 944-45 [(R.I.
1991)], we held that a trial justice may prohibit a
witness from taking the stand if the witness is likely to
invoke the Fifth Amendment before the jury. There is no
indication in the record that Bogan had changed his
position or had become willing to testify.  In fact,
defendant admitted that without immunity the court would
be "placed in a position where if we have to call him,
all we are going to hear from the witness, [is] 'I plead
the Fifth Amendment.'"

In this case, the trial justice found that the witness
had a legitimate privilege not to testify and defendant
does not dispute this finding.  Although the witness was
unavailable to Ramirez, this was not the fault of the
state and does not have an impact on defendant's Sixth
Amendment Confrontation rights.  Accordingly, we reject
this argument.

<u>State v. Ramirez</u>, 936 A.2d at 1265 (second and sixth alterations
in original).

     This Court's analysis follows the mode already described.
The decision of the Rhode Island Supreme Court declining to grant
Petitioner relief on this ground is not contrary to any clearly
established federal law, nor does that decision constitute an
unreasonable application of such law.  Indeed, federal case law
supports the determination made by the Rhode Island state courts
on this issue.  See <u>United States v. Branch</u>, 537 F.3d 328, 342
(4th Cir. 2008)(rejecting defendant's contention that witness
should have been required to take the stand and invoke his Fifth
Amendment privilege before the jury); <u>United States v. Woolsey</u>,

16

535 F.3d 540, 548 (7th Cir. 2008)("[Defendant] contends that he was entitled to question Frentz in front of the jury, if only to have Frentz again[4] refuse to testify.  He is mistaken.  A jury may not draw any inference from an individual's decision to exercise his right against self-incrimination under the Fifth Amendment."); United States v. Reyes, 362 F.3d 536, 542 (8th Cir. 2004)("[A] defendant does not have the right to call a witness to the stand simply to force invocation of the right against self-incrimination in the present of the jury.")(alteration in original); United States v. Castro, 129 F.3d 226, 231 (1st Cir. 1997)("At least in the absence of exceptional circumstances ... trial courts should not permit witnesses who have indicated that they will refuse to answer questions on legitimate Fifth Amendment grounds to take the witness stand and assert the privilege in front of the jury."); United States v. Klinger, 128 F.3d 705, 709 (9th Cir. 1997)("It is well established that a criminal defendant may not call a witness if that witness—whether or not a co-defendant—will merely be invoking his Fifth Amendment right not to testify.")(internal quotation marks omitted); United States v. Swanson, 9 F.3d 1354, 1359 (8th Cir. 1993)("[A] defendant does not have the right to call a witness to the stand simply to force invocation of the right against self-incrimination in the presence of the jury"); United States v. Hart, 729 F.2d 662, 670 (10th Cir. 1984)("Other circuits agree that a defendant has no right to call a witness to force him to invoke his Fifth Amendment privilege before the jury."); Bowles v. United States, 439 F.2d 536, 542 (D.C. Cir. 1970)(stating "the rule that a witness should not be put on the stand for the purpose of having him exercise his privilege before the jury");

---

[4] Frentz had previously invoked his Fifth Amendment privilege during the trial outside the presence of the jury. United States v. Woolsey, 535 F.3d 540, 544 (7th Cir. 2008).

see also Greiner v. Wells, 417 F.3d 305, 323 (2nd Cir. 2005)
(noting that "[t]he New York Court of Appeals has instructed that
it is 'wholly improper in most situations to ... allow[] a party
to parade a witness before the jury for the sole purpose of
eliciting in open court the witness' refusal to testify'")
(quoting People v. Thomas, 415 N.E.2d 931, 934 (1980))(second and
third alterations in original); United States v. Johnson, 488
F.2d 1206, 1211 (1st Cir. 1973)(holding that defendant "had no
right to bring [former co-defendant] before the jury solely to
have him claim the Fifth Amendment").

With respect to this issue, there appears to be no dispute
as to the facts.  Bogan clearly indicated that he would invoke
his Fifth Amendment privilege if called to testify.  See State v.
Ramirez, 936 A.2d at 1265 (noting "[t]he fact that Bogan remained
steadfast in his refusal to testify").  Thus, this Court cannot
find that the state courts' determination that Petitioner would
not be allowed to call Bogan as witness was based on an
unreasonable determination of the facts in light of the evidence
presented in the state court proceeding.

Petitioner also contends that the state courts' ruling
violated his Sixth Amendment right to present a defense.  See
Petition at 7; see also Washington v. Texas, 388 U.S. 14, 19, 87
S.Ct. 1920 (1967).[5]  The Sixth and Fourteenth Amendments

_____

[5] In Washington v. Texas, the Supreme Court explained the right to present a defense:

The right to offer the testimony of witnesses, and to compel their attendance, if
necessary, is in plain terms the right to present a defense, the right to present the
defendant's version of the facts as well as the prosecution's to the jury so it may
decide where the truth lies.  Just as an accused has the right to confront the
prosecution's witnesses for the purpose of challenging their testimony, he has the
right to present his own witnesses to establish a defense.  This right is a fundamental
element of due process of law.

Washington v. Texas, 388 U.S. 14, 19, 87 S.Ct. 1920 (1967); see also United States v.

18

concomitantly provide a criminal defendant the right to present a defense by compelling the attendance, and presenting the testimony, of his own witnesses. United States v. Serrano, 406 F.3d 1208, 1215 (10th Cir. 2005); see also Pennsylvania v. Ritchie, 480 U.S. 39, 56, 107 S.Ct. 989 (1987)("[C]riminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt."). Similarly, the Fifth and the Fourteenth Amendments' guarantee that no one shall be deprived of liberty without due process of law includes a right to be heard and to offer testimony. Rock v. Arkansas, 484 U.S. 44, 51, 107 S.Ct. 2704 (1987); United States v. Serrano, 406 F.3d at 1215.

Nevertheless, a defendant's right to present a defense is not absolute. United States v. Serrano, 406 F.3d at 1215 (citing United States v. Valenzuela-Bernal, 458 U.S. at 867); see also Rock v. Arkansas, 483 U.S. at 55 ("the right to present relevant testimony is not without limitation"). The right "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." Rock v. Arkansas, 483 U.S. at 55. For example, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." Taylor v. Illinois, 484 U.S. 400, 410, 108 S.Ct. 646 (1988); accord United States v. Gary, 74 F.3d 304, 308-09 (1st Cir. 1996) (quoting Taylor v. Illinois). While the Compulsory Process Clause provides the accused with an effective weapon, "it is a weapon that cannot be used irresponsibly." Taylor v. Illinois, 484 U.S. at 410.

---

Valenzuela-Bernal, 458 U.S. 858, 875, 102 S.Ct. 3440 (1982)(O'Connor, J., concurring)(quoting Washington v. Texas).

Here Petitioner wanted to question Bogan in the presence of the jury regarding Bogan's prior statements even though it was virtually certain that Bogan would invoke his Fifth Amendment privilege.  See Petition at 7; Objection at 2.  Petitioner readily admits that the purported purpose of this exercise would be to cast doubt on the credibility of Bogan's earlier testimony which had been read to the jury.  See Objection at 1 (faulting the trial justice for not allowing Petitioner's attorney "to put forth any questions to Bogan before the jury, in order to allow the court and the jury to view for themselves Mr. Bogan's demeanor while he answered any questions or sought protection from self-incrimination by pleading the 5th amendment").  However, Bogan's invocation of his Fifth Amendment privilege is not competent evidence.  See United States v. Taylor, 154 F.3d 675, 684 (7th Cir. 1998)("[T]he jury may not properly draw any inference from a person's exercise of her Fifth Amendment right against self-incrimination."); United States v. Larranaga, 787 F.2d 489, 499 (10th Cir. 1986)("We have long held ... that the jury cannot draw inferences from a prosecution witness' decision to invoke his Fifth Amendment privilege."); United States v. George, 778 F.2d 556, 563 (10th Cir. 1985)("If in fact the invocation of the Fifth Amendment privilege is of such dimension that it permits no inference of guilt or innocence, it is without probative value on the issue of defendant's guilt or innocence."); United States v. Harris, 542 F.2d 1283, 1298 (7th Cir. 1976)("The defendants have no right to have the jury draw inferences from the witnesses' exercise of [the Fifth Amendment] right."); United State v. Johnson, 488 F.2d at 1211 ("Neither side has the right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege either alone or in connection with questions that have been put to him."); see also United States v. Branch, 537 F.3d at 342 ("[A]ny

20

inferences that the jury might have drawn from [the witness]'s privilege assertion would have been only minimally probative-and likely improper-in any event"); United States v. Woolsey, 535 F.3d at 549 (finding that district court was correct in preventing defendant from calling witness where defendant's "only purpose in calling [the witness] would have been to invite the jury to infer from [the witness]'s refusal to testify that [defendant] was not culpable"); United States v. Reyes, 362 F.3d at 542 ("[A]bsent extraordinary circumstances, trial courts should exercise their discretion to forbid parties from calling witnesses who, when called, will only invoke a privilege."). Thus, I find that Petitioner's right to present a defense was not violated by the trial justice's refusal to allow his attorney to question Bogan in the presence of the jury.

Petitioner cites State v. Pona, 948 A.2d 941 (R.I. 2008), in support of his argument, see Objection at 2, but this case is inapposite.  It was not decided on any clearly identified federal constitutional grounds.  Rather, the Rhode Island Supreme Court found that the trial justice erred when he did not attempt to strike a balance between the necessity of admitting some evidence that the defendant had been charged with a prior murder "and the danger of unfair prejudice occasioned by the wholesale adoption of the bail-hearing testimony [from the prior murder]."  State v. Pona, 948 A.2d at 953.  The Pona court attached great significance to the fact that for "hours on end," id. at 943, the jury had been permitted "to hear the young victim's 'voice from the grave' (as described by the prosecutor in closing) ... especially when some of the substance of the bail-testimony tape focused entirely on demonstrating to the jury that Pona already was a dangerous murderer," id.  The Pona court also found that the trial justice had clearly abused his discretion in admitting the defendant's pager and fingerprints as this evidence "led the

jury to the inescapable conclusion that he also killed Feliciano, a crime for which he was not on trial." Id. at 949.   Thus, Pona is factually distinguishable from Petitioner's case.

Petitioner also cites Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2004), in support of this claim.   See Objection at 2.   However, the determination made by the Rhode Island state courts does not conflict with Crawford's holding that "[w]here testimonial evidence is at issue ... the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."   541 U.S. at 68.   As the state supreme court noted, here Bogan's "unavailability was two-fold—flight from the courthouse and a Fifth Amendment privilege not to testify absent a grant of immunity."   State v. Ramirez, 936 A.2d at 1263; see also Lee v. Illinois, 476 U.S. 530, 550-51, 106 S.Ct. 2056 (1986)(Blackmun, J. dissenting)(noting "the generally accepted notion that witnesses who successfully invoke the privilege against self-incrimination are 'unavailable' for purposes of determining whether their prior statements are admissible under an exception to the hearsay rule"); SEC v. Ficken, 546 F.3d 45, 53 (1st Cir. 2008)("a witness invoking his Fifth Amendment privilege is unavailable under [Federal Rule of Evidence] 804"); United States v. Jackson, 335 F.3d 170, 177 (2nd Cir. 2003)(same); United States v. Milano, 443 F.2d 1022, 1029 (10th Cir. 1971)("This Court has recognized an exception to the hearsay rule where testimony is unavailable because a witness exercises his privilege against self-incrimination and where there is prior recorded testimony by the witness in a proceeding in which the opposing party has had the opportunity to exercise its right of cross-examination.").   It is also clear that Petitioner had the prior opportunity to cross-examine Bogan during the first trial.   State v. Ramirez, 936 A.2d at 1261 (noting that the "record reflects an extensive cross-examination

22

spanning nearly twenty pages of transcript"). Thus, the state courts' determination regarding the admission of Bogan's prior recorded testimony is consistent with the holding in <u>Crawford</u>. Accordingly, Petitioner's second claim of error is, therefore, rejected.

### 3. Limburg's Testimony Re Sargent's Disclosure

Petitioner argues that the trial justice erred in admitting hearsay testimony. Petition at 7. The Rhode Island Supreme Court's consideration of this claim is reproduced below:

> The defendant next argues that the trial justice erred in allowing Limburg to testify about Sargent's disclosure "[t]hat he was an informant." He allowed this testimony under Rule 804(c), a declaration of decedent made in good faith. Rule 804(c) provides:
>
> > "A declaration of a deceased person shall not be inadmissible in evidence as hearsay if the court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant."
>
> The admissibility *vel non* of an out-of-court statement as an exception to the rule against hearsay is a decision left to the sound discretion of the trial justice, whose decision shall not be disturbed unless it reflects a clear abuse of discretion. <u>State v. Lynch</u>, 854 A.2d 1022, 1031 (R.I. 2004).
>
> We recently reviewed the Rule 804(c) exception and its relationship to the Confrontation Clause in <u>State v. Feliciano</u>, 901 A.2d 631 (R.I. 2006), in light of the Supreme Court's decisions in <u>Crawford v. Washington</u>, 541 U.S. 36, 124 S.Ct. 1354 ... (2004) and <u>Davis v. Washington</u>, 547 U.S. 813, 126 S.Ct. 2266 ... (2006). We have held that when a trial justice is called upon to evaluate an out-of-court statement under Rule 804(c), he or she must undertake a multistep analysis to determine whether the statement was "made *in good faith* before the commencement of the action and upon the personal knowledge of the declarant." <u>Norton v. Courtemanche</u>, 798 A.2d 925, 930 (R.I. 2002)(quoting <u>Waldman v. Shipyard Marina, Inc.</u>, 102 R.I. 366, 368, 230 A.2d 841, 843 (1967)). Additionally, the trial justice must discern,

under an objective standard, whether "the attendant circumstances display the earmarks of a 'testimonial' statement." <u>Feliciano</u>, 901 A.2d at 641. If the statement is found to be testimonial, the inquiry ends and the evidence must be excluded. <u>Id.</u> On the other hand, if the statement is found to be non-testimonial, it also must manifest an "indicia of reliability." <u>Id.</u>

Here, defendant argues that Sargent's declaration that he was an informant was not made in good faith because it was "completely self-serving." He additionally argues that because Sargent told Limburg that he was working for the State Police and the evidence suggested that he worked for the Woonsocket police, the statement was not reliable. On the evidence before him, the trial justice found that "Sargent had no reason to lie" to Limburg and rejected defendant's argument that the evidence should be excluded. We discern no abuse of discretion in this ruling.

The defendant also argues that the statement was testimonial and had no residual indicia of reliability, thus failing to satisfy Rule 804(c). A statement is testimonial if it is "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." <u>Davis</u>, 126 S.Ct. at 2274 (quoting <u>Crawford</u>, 541 U.S. at 51, 124 S.Ct. 1354). Thus, "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." <u>Id.</u> (quoting <u>Crawford</u>, 541 U.S. at 51, 124 S.Ct. 1354). In the case before us, Sargent's statement to Limburg was a casual remark from one associate to another and not related to any official inquiry or proceeding. When Limburg arrived at Sargent's home, the decedent was engaged in a telephone conversation; Limburg asked about the caller and Sargent responded that it was the police and that he was an informant. There is no suggestion that Sargent spoke under the belief that his statement to Limburg would be used at a later trial (particularly the trial of his alleged killer), nor was it made for the purpose of proving a fact or a motive for his subsequent execution-style murder. <u>See</u> <u>Crawford</u>, 541 U.S. at 51-52, 124 S.Ct. 1354 (classifying statements made for use at trial as testimonial). This evidence, as in <u>Feliciano</u>, was a statement of a decedent made to a friend and constituted a casual remark between acquaintances, and not a testimonial declaration.

> Finally, defendant contends that since Sargent told
> Limburg he was an informant for the State Police, and
> other proof suggested he was an informant for the
> Woonsocket police, the statement is unreliable and thus
> inadmissible under Rule 804(c).  We held in <u>Feliciano</u>,
> 901 A.2d at 642, that when the subject matter of a
> statement is of a serious nature, a "particularized
> guarantee[] of trustworthiness" exists to meet our
> reliability requirement. In the circumstances of this
> case, it is difficult to imagine a more serious
> declaration than an individual's admission that he or she
> is a police informant.  We hold, based on the facts
> before us, that Sargent's statement to Limburg, while
> touching upon a serious topic, was not testimonial and
> possessed the necessary guarantee of trustworthiness to
> satisfy the requirements of Rule 804(c).
>
> Moreover, even if the statement was admitted erroneously,
> its admission would constitute harmless error.  When
> evaluating improperly admitted evidence, this Court
> reviews the remainder of the evidence introduced to
> discern whether the error was harmless beyond a
> reasonable doubt.  <u>State v. Bettencourt</u>, 763 A.2d 636,
> 637 (R.I. 2000).  Viewing the abundant evidence in this
> case that supports the jury's verdict, we are satisfied
> that admitting the decedent's out-of-court statement
> amounts, at best, to harmless error.

<u>State v. Ramirez</u>, 936 A.2d at 1266-67 (first, fourth, and fifth
alterations in original).

It is clear from the foregoing excerpt that the state
supreme court correctly identified the applicable Supreme Court
case law governing the challenged portion of Limburg's testimony,
namely <u>Davis v. Washington</u>, 547 U.S. 813, 126 S.Ct. 2266 (2006),
and <u>Crawford v. Washington</u>, 541 U.S. 36, 124 S.Ct. 1354 (2004).
Petitioner makes no argument that the state courts' determination
of the issue is contrary to clearly established federal law.  <u>See</u>
Petition; Objection at 2-3.  Therefore, the question is whether
the state courts' ruling constitutes an unreasonable application
of such law.  28 U.S.C. § 2254(d)(1).

The Rhode Island Supreme Court found that the challenged

statement "was not testimonial and possessed the necessary guarantee of trustworthiness to satisfy the requirements of [Rhode Island Rule of Evidence] 804(c)." State v. Ramirez, 936 A.2d at 1267.  In concluding that the statement was not testimonial, the state supreme court considered the circumstances under which it had been made, see id. at 1266 (finding it to be "a casual remark from one associate to another and not related to any official inquiry or proceeding"), and noted that there was "no suggestion that Sargent spoke under the belief that his statement to Limburg would be used at a later trial (particularly the trial of his alleged killer) ...," id. at 1266-67.

This analytical approach in determining whether a statement is testimonial is consistent with that taken by the federal appellate courts.  See United States v. McGee, 529 F.3d 691, 697-98 (6th Cir. 2008)("The proper inquiry ... is whether the declarant intends to bear testimony against the accused.  That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.")(alteration in original); United States v. Udeozor, 515 F.3d 260, 268 (4th Cir. 2008)("[T]he 'common nucleus' of the 'core class' of testimonial statements is whether a reasonable person in the declarant's position would have expected his statements to be used at trial—that is, whether the declarant would have expected or intended to 'bear witness' against another in a later proceeding.")(quoting Crawford v. Washington, 541 U.S. at 51-52); id. ("the 'common nucleus' of testimonial statements is the declarant's expectations")(quoting Crawford); United States v. Jordan, 509 F.3d 191, 201 (4th Cir. 2007)("[T]he critical Crawford issue here is whether Ms. Brown, at the time she made her statements to Mr. Adams, reasonably believed these statements would be later used at trial."); United

States v. Maher, 454 F.3d 13, 20 (1st Cir. 2006)("This court, applying Crawford, has said a statement is testimonial if a reasonable declarant, similarly situated, would have the capacity to appreciate that the statement is of a sort typically 'preserve[d] ... for ... potential prosecutorial use.'") (alterations in original)(quoting United States v. Brito, 427 F.3d 53, 60-61 (1st Cir. 2005)); United States v. Summers, 414 F.3d 1287, 1302 (10th Cir. 2005)("[A] statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime."); United States v. Saget, 377 F.3d 223, 228 (2nd Cir. 2004)("[T]he determinative factor in determining whether a declarant bears testimony is the declarant's awareness or expectation that his or her statements may later be used at a trial."); see also United States v. King, 541 F.3d 1143, 1146 n.3 (5th Cir. 2008)(declining to hold statements "are testimonial because they were 'presented by the government for their testimonial value.'   Crawford's emphasis clearly is on whether the statement was 'testimonial' at the time it was made.")(quoting Crawford, 541 U.S. at 51-52).

In view of this case law, there is no basis for finding that the Rhode Island Supreme Court's determination that Limburg's statement was not testimonial constitutes an unreasonable application of clearly established federal law.   To the contrary, applying that law to Petitioner's case causes this Court to make the same finding as was made by the state courts, i.e., that Limburg's statement was not testimonial.   See Horton v. Allen, 370 F.3d at 84 (finding that statements made during "a private conversation" were nontestimonial as they were not made "under circumstances in which an objective person would reasonably believe that the statements would be available for use at a later trial")(internal quotation marks omitted).   Because the statement

27

was not testimonial, Petitioner's claim that his rights under the Confrontation Clause were violated fails.  <u>See</u> <u>United States v. Williams</u>, 506 F.3d 151, 156 (2nd Cir. 2007)("the Confrontation Clause simply has no application to nontestimonial statements"); <u>see also</u> <u>Davis v. Washington</u>, 547 U.S. at 823-26 (answering in the affirmative "whether the Confrontation Clause applies only to testimonial hearsay").

To the extent that Petitioner claims that the admission of the statement violated Rhode Island Rule of Evidence 804(c), <u>see</u> Objection at 3 (appearing to so argue), this claim is not cognizable in this Court, <u>see</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68, 112 S.Ct. 475 (1991)("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); <u>Smith v. Phillips</u>, 455 U.S. 209, 221, 102 S.Ct. 940 (1982)("Before a federal court may overturn a conviction resulting from a state trial ... it must be established not merely that the [State's action] is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.")(alterations in original)(internal quotation marks omitted).  "To be a constitutional violation, a state evidentiary error must so infuse the trial with inflammatory prejudice that it renders a fair trial impossible." <u>Petrillo v. O'Neill</u>, 428 F.3d 41, 44 n.2 (1st Cir. 2005); <u>cf.</u> <u>Jordan v. Hurley</u>, 397 F.3d 360, 362 (6th Cir. 2005)("federal habeas review of state court evidentiary rulings is extremely limited").  There clearly is no basis for making such a finding with respect to the admission of the statement in question.  Accordingly, to the extent that Petitioner seeks relief based on a violation or misapplication of Rhode Island

28

Rule 804(c), such claim is rejected.  See Kater v. Maloney, 459
F.3d 56, 61 (1st Cir. 2006)("Errors based on violations of state
law are not within the reach of federal habeas petitions unless
there is a federal constitutional claim raised.").

### 4.  Denial of Mistrial

Petitioner's next ground is based on the state supreme
court's refusal to find that the trial justice committed
reversible error when he refused to declare a mistrial based on
potential juror bias.  The facts underlying this particular claim
were recounted by the Rhode Island Supreme Court in its opinion:

> During deliberations, a juror asked the sheriff if the
> jury would "be all right when we return our verdict."
> Additionally, defendant alleges that his right to an
> impartial jury was violated when a juror overheard two
> sheriffs discussing the fact that they were directed to
> report to the trial justice's courtroom when the verdict
> was reached.  The trial justice responded to these two
> incidents appropriately-he brought the jurors into the
> courtroom and instructed them that regardless of the
> verdict in the case, their safety and well-being was
> assured.

State v. Ramirez, 936 A.2d at 1267.

In finding that the trial justice did not abuse his
discretion in declining to grant Petitioner's motion for a
mistrial, the state supreme court correctly noted that "due
process does not require a new trial every time a juror has been
placed in a potentially compromising situation," id. at 1267-68
(quoting Smith v. Phillips, 455 U.S. at 217).[6]  The court then

---

[6] Indeed, the Supreme Court has observed that:

[I]t is virtually impossible to shield jurors from every contact or influence that might
theoretically affect their vote.  Due process means a jury capable and willing to
decide the case solely on the evidence before it, and a trial judge ever watchful to
prevent prejudicial occurrences and to determine the effect of such occurrences when
they happen.

explained that "the proper method of determining the prejudicial effect of extraneous information is to consider the probable effect that such information would have on an average reasonable juror," State v. Ramirez, 936 A.2d at 1268, and that only if the trial justice concludes that the incident "would probably influence the decision of an average reasonable juror[] should a mistrial be considered," id. (quoting State v. Hartley, 656 A.2d 954, 962 (R.I. 1995)(internal quotation marks omitted). This approach is similar to that taken by a number of federal circuit courts. See State v. Hartley, 656 A.2d at 962 (stating this and citing Bibbins v. Dalsheim, 21 F.3d 13, 17 (2nd Cir. 1994); United States v. Gilsenan, 949 F.2d 90, 95 (3rd Cir. 1991); United States v. Bowling, 900 F.2d 926, 935 (6th Cir. 1990); United States v. Boylan, 898 F.2d 230, 262 (1st Cir. 1990)).

The state supreme court concluded its consideration of this claim with the following analysis:

> [T]he trial justice did not find that either incident gave rise to juror bias that would warrant a mistrial. Nevertheless, and out of an abundance of caution, he addressed the jury and satisfied himself that it would be "pure speculation" to assume that a juror's inquiry into her safety indicated a fear of rendering a guilty verdict. The trial justice also rejected defendant's contention that the sheriffs' remarks were prejudicial because it was the practice of the court to have additional court officers present when the verdict is taken in cases of a serious nature, with a sizeable gallery. The trial justice admonished the jurors to disregard anything they heard outside the courtroom and gave assurances about their safety. We deem this an adequate response to these minor incidents. It is our opinion that the trial justice did not abuse his discretion when he denied defendant's motion to pass the case and declare a mistrial.

---

Smith v. Phillips, 455 U.S. at 217.

State v. Ramirez, 936 A.2d at 1268.

This Court is unable to find that the state supreme court's conclusion that the trial justice did not abuse his discretion is contrary to or an unreasonable application of clearly established federal law.  Indeed, it is fully consistent with such law.  See United States v. Magana, 118 F.3d 1173, 1184 (7th Cir. 1997) ("Trial judges are vested with wide latitude with respect to remedying the potential prejudicial influence that may arise when jurors are exposed to improper information ...."); United States v. Thornton, 1 F.3d 149, 155 (3rd Cir. 1993)("[A] trial judge is usually well-aware of the ambience surrounding a criminal trial and the potential for juror apprehensions ... the district court's discretion concerning whether a colloquy should be held is especially broad"); Gov't of Virgin Islands v. Dowling, 814 F.2d 134, 137 (3rd Cir. 1987)("[T]he trial judge develops a relationship with the jury during the course of a trial that places him or her in a far better position than an appellate court to measure what a given situation requires."); United States v. Williams, 809 F.2d 75, 85 (1st Cir. 1986)("[W]e have allowed the trial court broad discretion to determine the nature and extent of any inquiry into juror bias."); see also United States v. Small, 423 F.3d 1164, 1180 (10th Cir. 2005)(finding no abuse of discretion in denial of mistrial after venireperson noted the presence of ten marshals and expressed concern about his security and that of his family where any prejudice that may have resulted from such statement was adequately addressed by the trial justice's explanation of the presence of the marshals in the courtroom).

Moreover, a state court's determination that there was no jury bias during the state trial is a question of fact which is

entitled to a presumption of correctness on habeas review.[7]  See
Schaff v. Synder, 190 F.3d 513, 534-35 (7th Cir. 1999)("Federal
courts in habeas proceedings may not disturb state court findings
'unless the federal habeas court articulates some basis for
disarming such findings of the statutory presumption that they
are correct and may be overcome only by convincing evidence.'")
(quoting Smith v. Phillips, 455 U.S. at 218).  Petitioner has
cited no evidence in the record which would permit the Court to
overcome this presumption.

Lastly, the state supreme court characterized the incidents
as "minor."  State v. Ramirez, 936 A.2d at 1268.  This Court does
not find that assessment to be unreasonable.  Cf. Mancuso v.
Olivarez, 292 F.3d 939, 950 (9th Cir. 2002)("No bright line
exists to assist courts in determining whether a petitioner has
suffered prejudice from juror misconduct.  We therefore place
great weight on the nature of the extraneous information that has
been introduced into deliberations.")(internal citations and
quotation marks omitted).  Accordingly, Petitioner's fifth claim
of error is rejected.

### 5.  Enhanced Sentence

Finally, Petitioner challenges the imposition of an enhanced
sentence for being a habitual criminal pursuant to R.I. Gen. Laws
§ 12-19-21 on the ground that this fact was not put before the
jury as allegedly required by Apprendi v. New Jersey, 530 U.S.
466, 120 S.Ct. 2348 (2000).  See Petition at 8.  As an initial
matter, the Rhode Island Supreme Court found that Petitioner had
waived this claim by failing to raise it at the time of
sentencing.  State v. Ramirez, 936 A.2d at 1269.  Accordingly,

---

[7] Petitioner asserts "that the jury was clearly influenced by overheard conversations of the
Sheriffs and the expressed verbal concerns for safety."  Objection at 4.  However, this assertion
appears to be based solely on Petitioner's unsupported belief and not on anything appearing in
the record.

this Court's consideration of this claim is barred unless
Petitioner can demonstrate cause[8] for the default and actual
prejudice as a result of the alleged violation of federal law, or
demonstrate that failure to consider the claim will result in a
fundamental miscarriage of justice.  Coleman v. Thompson, 501
U.S. 722, 750, 111 S.Ct. 2546 (1991).  Petitioner has not
demonstrated cause for his default and actual prejudice as a
result of the alleged violation of federal law, nor has he
demonstrated that a failure to consider the claim will result in
a fundamental miscarriage of justice.

Even if this Court were to ignore this deficiency,
Petitioner would still not be entitled to habeas relief.  The
Rhode Island Supreme Court, after deeming the claim waived,
nevertheless explained why it would reject Petitioner's argument
if the issue were properly before it.  The state supreme court
cited the Supreme Court's holding in Almendarez-Torres v. United
States, 523 U.S. 224, 118 S.Ct. 1219 (1998), "that prior
convictions need not be charged in the indictment or found by a

---

[8] The Supreme Court has explained that "cause:"

must be something *external* to the petitioner, something that cannot fairly be
attributed to him: "[W]e think that the existence of cause for a procedural default
must ordinarily turn on whether the prisoner can show that some objective factor
external to the defense impeded counsel's efforts to comply with the State's
procedural rule." [Murray v. Carrier,] 477 U.S. [478], at 488, 106 S.Ct. [2639], at
2645 [(1986)].  For example, "a showing that the factual or legal basis for a claim
was not reasonably available to counsel, ... or that 'some interference by officials'
... made compliance impracticable, would constitute cause under this standard." Ibid.
See also id., at 492, 106 S.Ct., at 2647-2648 ("[C]ause for a procedural default on
appeal ordinarily requires a showing of some external impediment preventing
counsel from constructing or raising the claim").

Coleman v. Thompson, 501 U.S. 722, 753, 111 S.Ct. 2546 (1991)(first, fifth, and sixth
alterations in original).

jury beyond a reasonable doubt," State v. Ramirez, 936 A.2d at 1270 (citing Almendarez-Torres, 523 U.S. at 228-48).  The Ramirez opinion also noted Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856 (2007), wherein the Supreme Court reiterated that prior convictions may be used for sentencing above statutory maximums without triggering a Sixth Amendment violation, State v. Ramirez at 1270; see also Cunningham v. California, 549 U.S. at 274-75 ("As this Court's decisions instruct, the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant."); id. at 288-89 ("Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.'")(quoting Apprendi v. New Jersey, 530 U.S. at 490).  Since the Cunningham decision, the Supreme Court has again noted its earlier holding in Almendarez-Torres "that prior convictions need not be treated as an element of the offense for Sixth Amendment purposes."  James v. United States, 550 U.S. 192, ___, 127 S.Ct. 1586, 1600 n.8 (2007).

It is true that some courts have noted a seeming conflict between Almendarez-Torres and Apprendi and have speculated that the holding in Almendarez-Torres may be overturned.  See, e.g., Hunter v. Werholtz, 505 F.3d 1080, 1082 n.1 (10th Cir. 2007) ("Apprendi mentioned the possibility that 'Almendarez-Torres was incorrectly decided,' 530 U.S. at 489, 120 S.Ct. 2348, and other members of the Court have since seconded this concern, see Shepard v. United States, 544 US. 13, 27, 125 S.Ct. 1254 ... (2005)(Thomas, J., concurring in the judgment)"); United States v. Pineda-Arellano, 492 F.3d 624, 631 (5th Cir. 2007)(Dennis, J., concurring)(noting "[t]he logical or rational disconnect between the holding in Almendarez-Torres and the basic underlying

principles of <u>Apprendi</u> and subsequent cases"). Indeed, this
circumstance was specifically noted by the <u>Ramirez</u> court. <u>State</u>
<u>v. Ramirez</u>, 936 A.2d at 1270 ("Although the holding in
<u>Almendarez-Torres</u> has been criticized over the years in both
dissenting and concurring opinions, it has not been overruled and
remains the law today.")(footnote omitted).

The Rhode Island Supreme Court's conclusion that <u>Almendarez-</u>
<u>Torres</u> remains good law is fully in accord with federal law. <u>See</u>
<u>United States v. Palacios</u>, 492 F.3d 39, 40 (1st Cir. 2007)
(rejecting argument "that <u>Almendarez-Torres</u> ..., which held that
prior convictions need not be found by a jury beyond a reasonable
doubt for the purpose of imposing sentencing enhancements, is no
longer good law because of subsequent Supreme Court precedents");
<u>United States v. McKenney</u>, 450 F.3d 39, 46 (1st Cir. 2006)
(reiterating prior "holding that '<u>Almendarez-Torres</u> remains
binding law'")(quoting <u>United States v. Ivery</u>, 427 F.3d 69, 75
(1st Cir. 2005)); <u>see also</u> <u>United States v. Steed</u>, 548 F.3d 961,
979 (11th Cir. 2008)("the prior-conviction exception of
<u>Almendarez-Torres</u> remains binding precedent"); <u>United States v.</u>
<u>Pineda-Arrellano</u>, 492 F.3d at 625 (noting that "<u>Almendarez-Torres</u>
has never been overruled but has been applied repeatedly by the
Supreme Court"); <u>United States v. Ivery</u>, 427 F.3d at 75 ("We have
ruled with a regularity bordering on the monotonous that, given
the explicit exception and force of <u>Almendarez-Torres</u>, the
rationale of <u>Apprendi</u> does not apply to sentence-enhancement
provisions based upon prior criminal convictions.")(quoting
<u>United States v. Moore</u>, 286 F.3d 47, 51 (1st Cir. 2002)).

"The Supreme Court has told the lower courts that they are
not to anticipate the overruling of a Supreme Court decision, but
are to consider themselves bound by it until and unless *the Court*
overrules it, however out of step with current trends in the
relevant case law the case may be." <u>Saban v. U.S. Dep't of</u>

Labor, 509 F.3d 376, 378 (7th Cir. 2007)(citing, among other cases, Tenet v. Doe, 544 U.S. 1, 10-11, 125 S.Ct. 1230 (2005)). The explanation of the Rhode Island Supreme Court as to why it would reject Petitioner's claim regarding an enhanced sentence is, therefore, fully in accordance with the clear directive of the Supreme Court.  Thus, even if this Court were to disregard the existence of an independent and adequate state ground for the supreme court's denial of this claim (namely that Petitioner waived this issue, see State v. Ramirez, 936 A.2d at 1269), there is no legal basis on which to grant Petitioner relief.

**V.   Summary**

The Rhode Island Supreme Court's adjudication of Petitioner's claims is not contrary to, nor does it involve an unreasonable application of, clearly established federal law as established by the United States Supreme Court.  The adjudication additionally did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court proceeding.  Accordingly, Petitioner's claim for habeas relief in this Court should be denied.

**VI.  Conclusion**

For the reasons stated above, I recommend that the Attorney General's Motion to Dismiss be granted and that Ramirez's Petition be denied and dismissed.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days[9] of its receipt.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  See United States v. Valencia-Copete,

---

[9] The ten days do not include intermediate Saturdays, Sundays, and legal holidays.  See Fed. R. Civ. P. 6(a).

792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford</u>
<u>Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


<u>/s/ David L. Martin</u>
DAVID L. MARTIN
United States Magistrate Judge
March 20, 2009